ELIZABETH EDWARDS, BY NEXT FRIENDS, v. C. O. EDWARDS, ET AL.

Delivered June 20, 1896.

**1. Equity—Jurisdiction in Protecting Persons Under Mental Disabilities— Suit by Next Friend.**

Where a person is of weak mind and mentally incapacitated by disease, decrepitude or other infirmity, though not in such condition as to be adjudged a lunatic by the special tribunal provided by law for such purposes, a court of equity has jurisdiction to entertain an action brought by his next friend in his behalf to set aside conveyances and protect him from the undue influence and fraud of others, although he denies such incapacity by a plea and motion filed in the case praying that the suit be dismissed.

**2. Same—Receiver—Expenses.**

The court may in such an action appoint a receiver and make proper allowances to the next friends for their expenses in the suit and the payment of their attorneys.

**3. Charge of Court—Harmless Error.**

Where the evidence in an action to set aside a deed from a mother to a son on the ground of undue influence clearly showed that the mother was old, unlettered and dependent on others in business matters, and that the son had been her agent and adviser for many years, an instruction that the jury must find that the son knew of the confidence reposed in him by his mother, to be chargeable with its abuse, was harmless error, since such knowledge was an irresistible inference from the other facts of the case.

ERROR from Tarrant. Tried below before Hon. S. P. GREENE.

*C. R. Bowlin* and *A. M. Carter*, for plaintiff in error, by Ambrose and Martha Creswell, next friends.—1. The suit was properly brought by Ambrose and Martha Creswell, next friends of Elizabeth Edwards, who was alleged to be a person of unsound and feeble mind by reason of old age and being nearly deaf and nearly blind and physically and mentally unable to take charge of and manage said litigation. Halzheiser v. Railway, 33 S. W. Rep., 887, and authorities cited; Hudgins v. Legett, 84 Texas, 209; King v. McLean, 12 U. S. C. C. A., 139-144; Owens Case, 17 Am. Dec., 311; Lamb v. Lamb, 23 Atl. Rep., 1009; Howard v. Howard, 1 Law. Rep. Ann., 610; s. c., 87 Ky., 616; 11 S. E. Rep., 416; Smith v. Smith, 106 N. C., 498; Reese v. Reese, 89 Ga., 645; 11 Am. & Eng. Ency. Law., 126; Whetstone v. Whetstone, 75 Ala.,

495; Mitford & Tyler's Eqty. Pl. & Pr., 125, and note; Heard's Forms of Eqty. Pl. (5 ed.), 29-31.

2. It is not the law that, in order for a principal to set aside a deed obtained from him by his agent, the evidence must show that the agent was aware that his principal trusted him.

3. The court did not err in allowing counsel fees, and expenses of said next friends. Yourie v. Nelson, 1 Tenn. Chan., 614; The Succession of Florence, 36 La. Ann., 304; Hand v. Railway, 21 S. C., 178; Voorhees v. Polhemus, 36 N. J. Eqty., 456; Colgate v. Colgate, 23 N. J. Eqty., 383; Davis v. Gemmell, 21 Atl. Rep., 715; Trustees v. Greenpugh, 105 U. S., 527; Texas v. White, 10 Wallace, 483; 1 Dan. Ch. Pl. & Pr. (5 ed), 80, 81, 82; Beach's Mod. Eqty. Pr., sec. 45; Adam's Eqty., 391; Weeks on Attorneys-at-law, 712; Foster's Fed. Pr., sec. 335, 336; Caldwell v. Young, 21 Texas, 800; Gammage v. Rather, 46 Texas, 105; Callaghan v. Grenet, 66 Texas, 236; 1 Am. & Eng. Ency. Law, 970.

4. The judgment of the lower court being for the recovery of farms as well as money, it was proper for the court to protect the interests of Mrs. Edwards by shaping its judgment or decree so as to effect that purpose, and a receiver is but the hand of the court to take charge of and hold the fruits of the recovery, and where this cannot be done by the clerk, the equitable powers of the court are broad enough to authorize the appointment of a receiver for that purpose. Railway Co. v. Stuart, 1 Texas Civ. App., 648, and authorities cited. High on Receivers, sec. 2.

*Stanley, Spoonts & Thompson* and *F. B. Stanley, guardian ad litem,* for plaintiff in error.—1. Ambrose and Martha Creswell had no power nor authority to institute, maintain or carry on this litigation and suit in the name or behalf of Elizabeth Edwards, nor to bind her nor her estate in any way for attorneys' fees, nor to incur any indebtedness in her behalf.

2. This suit was instituted, prosecuted and carried on to further the plans, interest and advantage of Ambrose and Martha Creswell and others, and to improve their financial condition, and against the interests, wishes and advantage of Elizabeth Edwards.

3. This court had and has no jurisdiction, power nor authority to hear, adjudicate, determine nor allow pecuniary claims nor demands against her nor her estate, nor to administer her estate, nor to direct payment of claims against it or her out of her property.

4. The court erred in appointing a receiver for the estate and property of Elizabeth Edwards, because the court had no power nor jurisdiction to take control of such estate and to administer it, nor to appoint a guardian for her estate, nor in any way control its management or disposition without her consent. Pom. Eq. Jur., 1311-1314.

*Stanley, Spoonts & Thompson,* for defendants in error.—1. The court

erred in assuming and exercising jurisdiction of the controversies between the parties, and the power to control and administer the property and estate of Elizabeth Edwards, at the petition of her alleged next friends, and in fixing her status as à person of unsound mind, against her wish. Constitution, art. 5, sec. 16; Rev. Stats., art. 2469; Railway v. Bailey, 18 S. W.. Rep., 481; Heidenheimer v. Thomas, 63 Texas, 290; Ray v. Insurance Co., 50 Texas, 511.

2. A court of equity may, at the suit of a next friend, interpose to restrain a threatened injury to the person or estate of a lunatic, minor or other person, and grant any relief appropriate to the exercise of such equitable powers, but the court cannot take control of and administer the estate. 3 Pom. Eq. Jur., secs. 1311, 1314, and notes; Dorsheimer v. Roorback, 18 N. J. Eq., 438; Nichol v. Thomas, 53 Ind., 42; Covington v. Neftzger, 140 Ill., 608.

3. The jurisdiction of a court of equity in such cases does not extend to the control of the estate of such person, nor authorize it to fix the status of such person as a person of unsound mind, and to annul solemn contracts and conveyances made and desired to be made by such person, nor to appoint a guardian, conservator or custodian for such person or her estate, and take from her the power of making future disposition or control of her property. 3 Pom. Eq. Jur., secs. 1311-1314, and notes.

4. There is no presumption of undue influence where a gift or conveyance is made by a parent to a child. Millican v. Millican, 24 Texas, 426; Saufley v. Jackson, 16 Texas, 579; 1 Bigelow on Fraud, 358.

STEPHENS, ASSOCIATE JUSTICE.—In 1849 Lemuel J. Edwards and Elizabeth Edwards, his wife, settled in Tarrant County, Texas, where in the course of twenty years they accumulated a valuable estate, consisting of both personal and real property. In 1869 Lemuel J. Edwards was killed by his son-in-law James Creswell, leaving Elizabeth, his widow, and C. O. Edwards, Martha Creswell and other children surviving him. An inventory and appraisement of this community estate was returned by the survivor, in accordance with the statute then in force. C. O. Edwards, being the oldest son, was mainly relied on by his mother, after his father's death, "to guide and direct her in nearly all of her business affairs."

October 18, 1889, Ambrose and Martha Creswell, with others, instituted a proceeding in the County Court of Tarrant County to have Elizabeth Edwards adjudged of unsound mind and a guardian of her estate appointed, which culminated in a verdict and judgment, on 25th of October, 1889, adverse to their contention.

Four days thereafter they, with still others, instituted suit in the District Court of Tarrant County against Elizabeth Edwards, C. O. Edwards, and L. J. Edwards, Jr., alleging a conversion of the personalty belonging to said community estate, which resulted in a judgment, De-

cember 8, 1892, against Elizabeth Edwards in the sum of $1819.54; but nothing was recovered against the other defendants.

A partition of the real property belonging to said estate had already been made before these proceedings were instituted, and the several tracts of land involved in this controversy, which were included in said inventory, had become the property of Elizabeth Edwards. By deeds made in 1883, 1889 and 1892 she divested herself of all of said lands, conveying them either to C. O. Edwards or Crawford Edwards, his minor son.

This suit was instituted on the 21st day of June, 1893, by Ambrose and Martha Creswell, as next friends of Elizabeth Edwards, to have these conveyances set aside, on the ground of fraud and undue influence on the part of C. O. Edwards in taking advantage of the feeble and helpless condition, mental and physical, of his mother, to strip her of all her property, which was of considerable value. The petition charged that she was an illiterate person of unsound and feeble mind, over eighty years old, weak and trembling from palsy, nearly deaf and nearly blind; that her mind was almost totally ruined by disease and old age, so that she was but a mere child, and unable to comprehend her rights or manage her affairs, etc.; and that C. O. Edwards had taken advantage of this condition and defrauded her out of all her property, and had her entirely under his influence and control.

A motion and plea sworn to by Elizabeth Edwards, denying her want of capacity, or that she had been defrauded, as alleged, and charging that Ambrose and Martha Creswell were her enemies and not her next friends, and praying that the suit be dismissed, was presented to the court and filed August 28, 1893, by attorneys subscribing themselves as her attorneys, who were also attorneys for C. O. Edwards.

The case was tried in March and April, 1895, and the court directed the jury to determine this issue first, which they did as follows:

"We, the jury, find that at the filing of this suit (June 21, 1893), at the date of the motion to dismiss (August 28, 1893), and the present time, the mind of Mrs. Elizabeth Edwards was impaired to the degree as specified in the issue submitted by the court, which issue is as follows, to-wit: 'Was the mind of the said Elizabeth Edwards so impaired by age, disease or otherwise as to render her, under the circumstances surrounding her, as shown by the evidence, incapable of understanding and appreciating her property rights, to such an extent as to render her unable to exercise her free and unbiased will with respect to the same, either at the date of the filing of this suit, to-wit, June 21, 1893, or at the date of filing said motion to dismiss, to-wit, August 28, 1893, or at this date; and if so, at which of said times?'"

The extent and effect of this finding will be better understood when the charge, which submitted this issue quite fully, is read in the light of the evidence; but as only a question of jurisdiction is raised on this branch of the case, enough is stated for the disposition of that question.

Having determined this preliminary inquiry in favor of plaintiffs be-

low, the jury, under charges submitting the issues as to the validity of the several conveyances made by Elizabeth Edwards, found against those made in 1892, and sustained all others. A recovery of a few thousand dollars in money was also had against C. O. Edwards by plaintiffs below, in behalf of Elizabeth Edwards. The court approved the verdict, and of his own motion, on the ground of its being made to appear that the mind of Elizabeth Edwards was so impaired as to render her incapable of managing her own affairs and protecting the property so decreed to her, appointed a receiver to take charge of the real estate, collect the rents, hold the money collected on the judgment, etc., subject to the further orders of the court and until a duly qualified person should apply for the same.

Thereafter, during the same term of court, an allowance was made to the next friends and their attorneys for reasonable expenses and attorney's fees on account of the prosecution of this suit to judgment, which the receiver was directed to pay out of the first moneys coming to his hands. The motion for this allowance was resisted by an attorney appointed by the court as guardian ad litem for that purpose, who was also one of the attorneys for C. O. Edwards.

Plaintiffs below moved for a new trial as to so much of the verdict as upheld the conveyance made in 1889 of the north half of the George Shields survey, situated near Fort Worth, known in the record as the McCart land, and sued out a writ of error to this court, assigning errors to that part of the judgment only.

A writ of error was also sued out in the name of Elizabeth Edwards by the attorneys who presented her plea and motion in the trial court, and by her guardian ad litem, one of said firm of attorneys. The questions raised under this writ will be first considered.

It is insisted that the District Court had no jurisdiction in the premises, and that it erred in refusing to dismiss the suit upon the sworn plea and motion of Elizabeth Edwards. The question thus raised has been considered by the courts and discussed by the text writers, and it seems to be the general consensus of opinion that equity jurisdiction is maintainable in cases like this, where the person of weak mind has not been or cannot be adjudged a lunatic by the special tribunal provided by law for that purpose, and yet it is so far incapacitated by disease, decrepitude or other infirmity as to require the protection of a court of equity against the undue influence and fraud of others. The most satisfactory statement of this doctrine we have been able to find is made by Mr. Beach in sec. 49 of his work on Modern Equity Practice, where the authorities are cited in the foot notes. Holzheiser v. Railway Co., 33 S. W. Rep., 887, decided by the Galveston Court of Civil Appeals, is an instance of its application. Howard v. Howard, 1 L. R. A., 610; 87 Ky., 616, is to some extent a precedent for the course pursued in this case, where the alleged incompetency was disputed by the person in whose behalf the alleged next friends purported to sue.

It is also insisted that the court had no power to appoint a receiver or

to make allowances, to˙be paid out of the estate, to the next friends or their attorneys to cover reasonable attorney's fees and other necessary expenses of the litigation. But this power would seem to be but an incident of and included within that just considered. The protection of the court through a receiver, who is but an arm thereof, seems as requisite in the last instance as the original decree of cancellation and recovery was in the first. See Railway v. Stuart, 1 Texas Civ. App., 642. Besides, it is not perceived how any harm could result from such appointment of a receiver to take care of the property pending further litigation, since when it is at an end, if there is no authority or occasion for the further continuance of the receivership, it may then be terminated on motion made in the trial court. So as to the allowances, if litigation of this class must be undertaken by a next friend at his own expense, a court of equity being denied the power of doing full justice to all parties by its decree, such next friend would likely be deterred from often undertaking so kindly and costly a service for an unfortunate victim of infirmity and fraud. Voorhees v. Polhemus, 36 N. J. Eq., 456, and authorities there cited.

It was perhaps irregular for the attorneys to move for this allowance in their own names, instead of those of the next friends, but no objection is so urged to the method of procedure in this respect, or to the amount of the allowance, as to require us to pass thereon. It is the fact of the allowance, or rather the power of the court to make it, that we are called upon to determine.

We therefore overrule all the assignments of error submitted in the brief of attorneys and guardian ad litem for Elizabeth Edwards.

We pass next to the issue raised by Ambrose and Martha Creswell, under their writ of error, as to the validity of the conveyance from Elizabeth to C. O. Edwards of the McCart land, dated October 31, 1889, which they failed to have set aside.

This tract of about 160 acres, owing to its proximity to the City of Fort Worth, was then of the estimated value of $40,000 or $50,000. The deed recited a consideration of "$4000 to be paid by said C. O. Edwards, without interest and on demand, and the further consideration that said C. O. Edwards should faithfully comply in all things with the terms of a certain contract entered into at the same time between C. O. Edwards and Elizabeth Edwards," and expressly reserved a vendor's lien to secure the payment of said note and compliance with the terms of said written contract, which is as follows:

"State of Texas, ⎫ Know all men by these presents:
"Tarrant County, ⎭

"That I, C. O. Edwards, of the County of Tarrant and State of Texas, as a part of the consideration for the land this day conveyed by my mother, Elizabeth Edwards, said land being a part of the George Shield's 320 acres in Tarrant County, Texas, do hereby agree and bind myself, my heirs and legal representatives, that I will care for, main-

tain and support my said mother, and furnish her everything necessary for her comfort and convenience so long as she may live.

"Witness my hand this October 31, 1889.

"C. O. Edwards."

The note of even date with the deed, and reciting that it was given for the land, bore interest at 8 per cent per annum, and provided for 10 per cent attorney's fees, in case it should be sued upon, etc. From the date of this transaction up to the trial Elizabeth Edwards lived with, and, it seems, continues to live with, C. O. Edwards, who has so far complied with the terms of the written undertaking quoted above. The note, however, had not been paid, but was more than four year's past due at the trial below. After the argument of the cause the court permitted C. O. Edwards, against the objection of Ambrose and Martha Creswell on the ground that it came too late, to make a written tender of the amount then due upon the note, for which judgment was finally entered against him.

The Creswells conclude the statement of the evidence in their brief as follows: "We do not insist that Elizabeth Edwards did not have mental capacity to make a valid deed in October, 1889, but that she was then old, ignorant, weak minded and nearly blind."

There was evidence from which the jury might have found, not only that she had the requisite capacity to make the deed, but also that she made it understandingly and without the constraint of any undue influence.

The first error is assigned to the charge, and complains of the qualification of the several paragraphs submitting the issue of undue influence on the part of C. O. Edwards, growing out of the relation of confidence between him and his decrepit mother, to the effect that he must have been aware that such trust was reposed in him, before that ground of recovery would be available. The assignment contains this statement: "The evidence clearly showed that plaintiff was an old, illiterate woman, nearly deaf and nearly blind; that C. O. Edwards had been her agent to attend to nearly all of her business for many years; that she never refused during all these years to trust him or to do as he requested her."

Now could he, who was a thrifty and successful business man in the prime of life, when so long trusted by his unlettered and dependent mother, have been ignorant of that fact? We think not. If the condition of confidence was shown, knowledge thereof on the part of C. O. Edwards was an irresistable inference. It follows that the qualification of the charge, if abstractly erroneous, could have done no harm when applied to the facts of this case. We therefore overrule this assignment.

She next complains of the court's refusal to give a special instruction to the effect that the failure of C. O. Edwards to pay the $4000 note was itself a forfeiture of his title to the land. In view of what has al-

ready been stated and what follows, this position is so manifestly untenable that it need not be discussed.   Nor does the assignment which complains that the tender of the purchase money came too late show any reversible error.   The petition did not claim a forfeiture for non-payment of purchase money, and does not seem to have been drawn with that in view, which probably explains the delay complained of.

The other assignments, except the eighth, complain of the court's refusal to grant a number of special instructions.   After carefully reading these several refused charges in connection with the charge given, we are of opinion that, in so far as they contained correct propositions applicable to the case, and were not charges upon the weight of the evidence, they were included in the main charge, which was quite full and not to the prejudice of those now complaining.

The eighth and last assignment in the brief complains that there was no evidence to sustain the verdict in the six or seven particulars therein mentioned.   But the testimony set out in the first part of the brief contradicts this assignment.   For instance, C. O. Edwards testified that his mother wanted to give him this land and wanted him to take care of her; that he told her at the time the land was worth at least $50,000, and that she said she didn't care if it was worth $100,000, she would do as she pleased with it.   He further testified: "When this first case, this insanity suit, was instituted against her, she said then she was going to do something with this piece of land if I consented, or she would arrange with somebody else; she was going to have a place to stay; she wasn't going to be aggravated the balance of her life.   I told her to do as she pleased with it; didn't care whether she gave me anything or not; didn't ask for anything unless she wanted to.   I told her to use her own pleasure about it.   That was the McCart land, as it is called."   He entirely denied that any influence had been brought to bear on her to induce the making of the deed, and the circumstances tended, at least, to show that the conduct of the daughters and sons-in-law in harassing her with law suits caused her to seek shelter with her oldest son and give him the land.   The assignment, then, that there was no evidence to support the verdict is not sustained.

We are not called upon by this assignment to determine the sufficiency of the evidence to support the verdict.   Railway v. Raney, 86 Texas, 363.

Judgment affirmed.                                                    *Affirmed.*