**SMITH et ux. v. MONROE et al.    (No. 2105.)**

Court of Civil Appeals of Texas.    El Paso. Dec. 15, 1927.

Rehearing Denied.    Jan. 5, 1928.

1. **Marriage ⬤⇒7, 58(3)—Mental incapacity invalidates marriage, and courts will annul or rescind contract.**

Marriage contracts, like contracts of any other kind, depend on consent of parties, and if one of parties is mentally incapacitated to such an extent as not to understand nature of his or her act, there is no contract, and courts will, on a showing to that effect, annul or rescind upon application therefor.

2. **Marriage ⬤⇒60(1)—Suit to annul marriage contract because of mental incapacity may be prosecuted by next friend.**

A suit to annul or rescind marriage contract on the ground one of the parties is mentally incapacitated to such an extent as not to understand nature of act may be prosecuted by next friend.

3. **Receivers ⬤⇒17—District court, having jurisdiction of action to annul marriage for mental incapacity of party, may appoint receiver to prevent dissipation of property and enjoin interference with estate (Const. art. 5, § 16; Rev. St. 1925, art. 4102).**

District court, having jurisdiction of an action to annul a marriage on ground of mental incapacity of one of parties, has power to appoint a receiver to take charge of property to prevent its being dissipated and enjoin further interference with estate by one who is alleged to have been dissipating it, notwithstanding Const. art. 5, § 16, and Rev. St. 1925, art. 4102, relative to jurisdiction of county courts to appoint guardians for incompetents.

4. **Injunction ⬤⇒38—Injunction to protect property later to be disposed of will not be refused on mere showing that same relief might be obtained in some other forum.**

Where granting of injunction is merely ancillary to the main action and is for the purpose of protecting property later to be disposed of by the court, showing that same relief may be obtained in some other forum will not prevent court from making such order.

5. **Appeal and error ⬤⇒870(4)—Order appointing receiver, unappealed from, will be sustained unless void.**

Where no appeal was taken from order appointing receiver, action of court in such respect will be sustained unless order appointing received was absolutely void.

6. **Injunction ⬤⇒38—Trial court did not abuse discretion in enjoining husband from asserting right to properties of wife, alleged to have been mentally incompetent when married.**

Trial court *held* not to have abused discretion in granting injunction restraining husband from asserting any kind of possession or right to possession of any properties constituting estate of wife, alleged to have been mentally incompetent at time of marriage.

Appeal from District Court, Pecos County; C. R. Sutton, Judge.

Suit by W. A. Smith and wife against Henry C. Monroe, wherein Jerry Monroe intervened, and Henry C. Monroe and another adopted allegations in application for intervention. From an order granting an injunction, plaintiffs appeal. Affirmed.

Glenn R. Lewis and Wright & Gibbs, all of San Angelo, for appellants.

Belcher & Montague, of Del Rio, and James Cornell and R. G. Hughes, both of San Angelo, for appellees.

PELPHREY, C. J. Appellants filed suit in the district court of Pecos county, Tex., against Henry C. Monroe, in the form of trespass to try title, describing some 21,175 acres of land in Pecos county.

Appellee Henry C. Monroe filed his plea in abatement alleging that his mother, Mrs. Mattie A. Monroe, or Mrs. Smith, was wholly lacking in mental capacity at the time of her purported marriage to appellant W. A. Smith; that the property involved in the suit was the property of his mother, Mrs. Smith; and that W. A. Smith had no interest therein.

The property was sequestered by appellants and later replevied by appellee Henry C. Monroe.

Later, appellee Jerry Monroe filed a petition to be permitted to intervene in said suit as the next friend of his mother. Permission was granted to said Jerry Monroe to intervene in said suit, and, as prayed for in intervener's petition, a receiver was appointed and W. A. Smith was enjoined from asserting any kind of possession or right to the possession of any of the properties constituting the estate of Mrs. Mattie A. Monroe (Mrs. M. A. Smith).

Later, Henry C. Monroe and Willie Monroe adopted the allegations in the application for intervention and asked for the relief prayed for therein.

A master in chancery was appointed with instructions to make an inventory and list all

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

property belonging to the estate of Mrs. Mattie A. Monroe, audit all accounts of the estate, hold and conduct hearings, and make reports to the court.

As required by the court, M. A. Smith, by her next friend, Jerry Monroe, executed an injunction bond in favor of W. A. Smith in the sum of $5,000. A bond was also executed in the same amount in favor of W. A. Smith by Jerry Monroe as intervener.

Appellants have appealed to this court from the injunction order only and in their appeal bond expressly recite that no appeal is taken from the order appointing the receiver.

### Opinion.

Appellants ask for a reversal of the case upon the following four propositions:

"(1) If the allegations of the plea of intervention be taken as true, it appears that the probate court of Tom Green county has jurisdiction over the estate of Mrs. M. A. Smith, and the district court of Pecos county is without jurisdiction to appoint the receiver herein and order an injunction ancillary to such receivership.

"(2) If Mrs. M. A. Smith is in fact non compos mentis, resort to the probate court offers a complete and adequate remedy for the protection of her estate.

"(3) The order appointing a receiver herein is wholly void because made prior to the filing of the plea of intervention, and, the injunction order here appealed from being ancillary, such void receivership likewise falls.

"(4) Even if the court had jurisdiction to grant an injunction, the order granting same was in this case an abuse of discretion."

In order that a better understanding of the questions before us may be had, we deem it necessary to incorporate herein the petition for intervention of appellee Jerry Monroe. It reads as follows:

"Now comes Jerry Monroe, and respectfully requests that he be permitted to intervene in this cause, for and upon behalf of and as next friend of his mother, Mrs. Mattie A. Monroe, and for grounds of such intervention says:

"First. That Jerry Monroe is a resident of Pecos county, Tex., and said Mrs. Mattie A. Monroe, a resident of Pecos or Tom Green county, Tex.; that one W. A. Smith, who is styled a plaintiff in this cause, is a resident of Tom Green county, Tex.; that Mrs. Mattie A. Monroe, the mother of this intervener, and the person for and upon whose behalf he intervenes, is now more than 72 years of age.

"Second. That many years ago, the said Mrs. Mattie A. Monroe was married to John Monroe, and they lived together as husband and wife for many years, and until the death of the said John Monroe; that at the time of their marriage neither the said John Monroe nor the said Mrs. Mattie A. Monroe was possessed of any property, but that after their marriage as a result of industry, attention to business, and business judgment on the part of John Monroe and economy and frugality on the part of Mattie A. Monroe and aid rendered by her, the said John Monroe and wife, Mattie A. Monroe, accumulated a large estate, all of which was community between

them, consisting of ranch lands, live stock, and personal property located in various counties in Texas, the land and live stock being principally located in Pecos county, Tex., and at the time of the death of said John Monroe, to wit, about May 27, 1913, said community and estate was of the value of approximately $70,000, and that at his death, as hereinabove stated, the said John Monroe, left a will by which he bequeathed and devised to said Mrs. Mattie A. Monroe all the property, both real and personal, of which he died seized and possessed, and that the last will and testament of said John Monroe was duly probated in the probate court of Pecos county, Tex., and by its probate and the proceeding had in connection therewith all of said community estate and the title thereto was vested in said Mrs. Mattie A. Monroe, and all the property thus accumulated by them during their marriage relation became her property.

"Third. That the said Mattie A. Monroe did not have the advantages of school and is, therefore, illiterate, being unable to sign her own name, and at the time of the death of the said John Monroe, while she had been a devoted wife and helpful in the accumulation of the property and a devoted mother to the children born of said marriage, had had no business experience and was wholly inexperienced in the affairs of life and in the management of property, but in those matters depended entirely on her husband, John Monroe, and has devoted the years of her married life to bringing up and caring for the children of said marriage, and attending to her household duties, and assisting in every way possible her said husband in the accumulation of said property, and encouraged him, but by reason of her inexperience and inability was wholly unable to manage the community estate of herself and her husband with which she had become vested, as hereinabove alleged, and then, realizing her inexperience and inability to preserve, care for, and manage her estate, she intrusted the same to her son, Jerry Monroe, your applicant for intervention, and while thus intrusted the said Jerry Monroe spent his entire time and gave his entire attention to caring for, managing, and controlling said estate, and during such time was successful and preserved and kept same intact, but that upon the death of said John Monroe the said Mattie A. Monroe further failed in health and worried to a greater extent over the care and management of the estate she possessed, and worried to such an extent that her mind became further impaired, and she became very fretful, suspicious, contentious, and disagreeable and grew dissatisfied with Jerry Monroe's management of the property, and more frequently accused her children of being dishonest and attempted to assume the management of her property herself; that she refused the assistance offered her and finally through persuasion and assistance of W. A. Smith sold all the live stock upon the ranch, made a lease or seemingly concurred in the sale of said live stock and lease of said ranch and went to San Angelo, but before said time had met W. A. Smith, who was then about 43 years of age, who was and had long been addicted to habitual and immoderate use of intoxicating liquor, wholly inexperienced in business, of a disreputable character, unable to take care of himself, let alone a wife, but that the said W. A. Smith fraudulently conceived the idea of acquiring the possession of all the property owned by Mrs. Mattie A. Monroe,

and ultimately the title thereto, and the control and management thereof, and the power to dispose of the same and use the proceeds for his own benefit, and in order to consummate the design so formed, and for the purpose of putting himself in position where he might get possession of all such property, and thus be able to squander and dissipate the same, all of said time knowing that the said Mattie A. Monroe's mind was in such condition as to make her an easy prey to his design, and that she was unable and did not have the capacity to understand the effect of her action and conduct, nor to fathom his fraudulent design, and said W. A. Smith pretended that he was devoted to the said Mrs. Mattie A. Monroe, and proposed marriage to her, having at such time no intention to live up to his marital obligations, and knowing that said Mrs. Mattie A. Monroe was, and for a long time prior thereto had been, wholly incapable mentally and physically to understand the consequences of marriage, and that she did not understand the same, and knowing that said Mrs. Mattie A. Monroe was then, and for a long time had been, without an understanding as to the nature of the marriage vows, but that by his false and deceitful professions of love and devotion, the said W. A. Smith induced the said Mrs. Mattie A. Monroe to go through a formal ceremony of marriage with him and procured the issuance of a marriage license and procured a minister to perform a ceremony on July 29, 1917, but at the time of the performance thereof, and at all previous times mentioned, the said Mrs. Mattie A. Monroe was utterly ignorant of and unable to understand the nature of her acts, and in all these things the said W. A. Smith was prompted by his desire to become possessed of her property, and all was done in pursuance of the fraudulent purpose and design on his part to become in possession of, convert to his own use, and dissipate the property belonging to Mrs. Mattie A. Monroe, and at all times was inspired with the evil interest and self-conscious purpose of thus procuring the possession of the property of said Mrs. Mattie A. Monroe, and to appropriate the same to his own use and benefit, and in turn to squander and dissipate the same upon himself, and of despoiling the said Mrs. Mattie A. Monroe of her property and depriving her and leaving her in her old age without means of support; that for the reasons and because of the facts stated, no marriage was ever had or consummated between them, and the pretended and purported marriage was void and without force and effect, the said Mrs. Mattie A. Monroe being at the time of the proposal by said W. A. Smith, and at all subsequent times, ever since and now non compos mentis.

"Fourth. That after going through the form of marriage as aforesaid, the said W. A. Smith contrived in every way possible to secure the management and control of the estate of said Mrs. Mattie A. Monroe, and to assume the management and control thereof, and by his constant efforts and his interest thus exercised over said Mrs. Mattie A. Monroe the said W. A. Smith has induced Mrs. Mattie A. Monroe to execute conveyances of land and interest in land, to execute what is commonly known as oil and gas leases and mineral deeds and royalty deeds, all for a nominal consideration, and, having received the proceeds, has converted same into money and has dissipated and is now

dissipating and will continue to dissipate said estate unless restrained by order of this court, and, in furtherance of his purposes to secure to himself all the property of said Mrs. Mattie A. Monroe, the said W. A. Smith has encouraged the sale of properties which constituted the community estate of the said John Monroe and Mrs. Mattie Monroe, and having brought about pretended sales thereof, and has invested the proceeds in other property whenever he could take the title thereto in his own name, so that upon the death of the said Mrs. Mattie A. Monroe, who is many years his senior, he may be able to assert and establish the false and fraudulent claim that the property constituted part of the community property of himself and Mrs. Mattie A. Monroe, and was acquired during their marriage relation, if not indeed to assert and attempt to establish that the property constituted his separate property. In order to accomplish this purpose he has sold properties constituting the estate of said Mrs. Mattie A. Monroe, easily proved to be her separate property, at a price greatly less than its actual market value, and at a price less than might have been obtained, and in turn with the proceeds thereto has purchased other properties paying prices greatly in excess of the market value of such other properties, and prices in excess of the amount such properties might have been obtained for, all with the view of so converting and intermingling the properties for the purpose of laying a predicate and assertion by him and the establishment by him of the false claim that the properties were community of himself and said Mrs. Mattie A. Monroe, or his separate property, and that in negotiating and in the disposition of the properties of said Mrs. Mattie A. Monroe he has had her execute instruments of conveyance, or purported instruments of conveyance, signed by her by her mark, which she did not read, could not have read, and which were not explained to her, and which she did not understand, and could not have understood, and was without capacity to understand, to which she was induced to put her cross and by the false and fraudulent representations of the said W. A. Smith, and in procuring the execution of which by her the said W. A. Smith fraudulently and greatly against her interest used his influence over her, and has at all times contrived to secure the delivery to himself of as much money as he could get with the view of using it for his own purposes in satisfaction of his own desires, and in dissipation as hereinafter more fully alleged, and in violation of laws.

"Fifth. That the estate of said Mrs. Mattie A. Monroe consists of lands, money, and live stock; that said lands for most part are situated in Pecos county, Tex., in or contiguous to the oil-bearing area; and that said W. A. Smith has constantly tried to make mineral leases, mineral deeds, and royalty deeds upon said lands, has made many such, and if he is permitted to have the same made, executed, and seemingly concurred in by said Mrs. Mattie A. Monroe, others will be in position where they might claim all the right so conveyed, and unless some summary action is taken by this court the estate of said Mrs. Mattie A. Monroe will in large part, if not wholly, be squandered, dissipated, and lost to the said Mrs. Mattie A. Monroe, put beyond her reach and beyond the process of the law and lost to her and those who

might later become entitled thereto; that the said W. A. Smith has led a dissolute life, has often been charged with violation of the law, often been convicted and has for many years prior to his purported marriage associated with people without standing in the community, and now has as his boon companions habitual violators of the law, habitually signs bonds for men and women charged with base violations of the law, associates with men and women of loose type, is the constant associate and companion of a woman of notorious reputation, does not even profess now to have any affection for the said Mrs. Mattie A. Monroe, continues to pose as her husband only that he might be enabled to carry out the plans hereinabove alleged, and, if at any time he might get possession of the property of said Mrs. Mattie A. Monroe, would without hesitancy desert her and leave her in her old age dependent upon charity or upon relatives or friends.

"Sixth. That applicant Jerry Monroe is a son of the said Mrs. Mattie A. Monroe, is much devoted to her, is acting with the knowledge and consent of her other children, seven in number, and while at one time prior to the pretended marriage hereinabove alleged the said Mattie A. Monroe executed a will by the terms of which she left such property that she might die seized and possessed of to her children, share and share alike, and while this applicant is confident that her mental condition is not such as will enable her to make another will which might be probated, and while the children aforesaid would succeed to her property, share and share alike, if it should be determined that she was lacking in mental capacity at the time of the execution of the previous will, and while the said Jerry Monroe has a financial and material interest as shown by the facts, yet he is prompted in asking to intervene herein by his love and devotion to his mother and by the desire to have the property placed in the hands of some one who would manage it prudently, economically, and in a businesslike way, and by one who would be more than generous with his said mother in allowances made to her, and indeed, if necessary, would be glad to see her whole estate expended to make her declining years more pleasant, but fears that if some one having such an interest in her does not take a part in her behalf, the property will be disposed of as hereinabove alleged and the mother of this applicant left without means of support.

"Wherefore your intervener prays that he be permitted to file this intervention that said W. A. Smith be cited to appear and answer herein; that upon final trial, the pretended marriage hereinabove alleged be by decree of this court annulled and held for naught, and that said Mattie A. Monroe have judgment against the said W. A. Smith, establishing her rights and title to and for the possession of all the property belonging to her estate, by whomsoever now held, and, having such judgment, that writ of restitution in her behalf issue; that pending this trial, this court appoint a suitable person as receiver for all properties of the said Mattie A. Monroe situated in the state of Texas; that such receiver be authorized and required to take charge of all such property and of all properties composing the estate of said Mrs. Mattie A. Monroe, wheresoever situated in this state, and that he be authorized and required to reduce all such property rights and claims to possession; and that he be authorized and required to institute suits in proper forms for the receiver of any and all such property, and to bring and maintain and prosecute to final judgment all such suits as he may deem necessary, to set aside, cancel, rescind, and hold for naught conveyances attempted to be made by the said W. A. Smith, in which the said Mrs. Mattie A. Monroe has been induced to join, employing an attorney or attorneys and contracting with them for the payment of fees in connection with his duties; that the court, if it deems it necessary or proper, upon and at the time of appointing such receiver, appoint a proper person as master in chancery, imposing such duties upon such master in chancery as it may deem necessary or proper, or to make such appointment at such other time as it may deem it necessary to do so; that the said W. A. Smith be enjoined from asserting any kind of possession or right to possession to any properties constituting the estate of Mrs. Mattie A. Monroe, and that he be required to execute, acknowledge, and deliver to the person appointed receiver transfers and assignments, if desired by such receiver and demanded by him, of all properties belonging to said Mattie A. Monroe, whether the same be held in the name of said W. A. Smith, in the name of Mrs. Mattie A. Monroe, in the name of Mattie Monroe Smith, or in the name of W. A. Smith and Mattie Monroe Smith; that he be required to give an accounting and file statements showing in detail all moneys that have come into his possession since the date of the pretended marriage, and showing the disposition of same and all properties purchased by him with the proceeds thereof, and that the said W. A. Smith be enjoined and restrained from in any manner interfering with the possession, management, and control of the properties of said Mrs. Mattie A. Monroe, wheresoever situated, and from interfering with the receiver to be appointed by the court in the prosecution of his duties, under this appointment; that such receiver be given such other and further powers as this court may deem proper in the premises; that your petitioner have judgment for his costs, and for such other and further relief, general and special, legal and equitable, as might be proper."

Appellants contend that the district court was without jurisdiction to appoint a receiver for the estate of Mrs. M. A. Smith, and that the Constitution (article 5, § 16, and article 4102, Rev. Stat. 1925, conferred exclusive jurisdiction in such a case upon the county court of her residence; that the district court being without jurisdiction, the order appointing the receiver was void; and that the injunction granted ancillary thereto was also void.

Among other things, article 5, § 16, provides as follows:

"The county court shall have the general jurisdiction of a probate court; they shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration; settle accounts of executors; transact all business appertaining to deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the settlement, partition and distribution of estates of deceased persons."

Article 4102, Rev. Stat. 1925, reads as follows:

"*Jurisdiction of County Court:*—The county court shall appoint guardians of minors, persons of unsound mind and habitual drunkards, settle accounts of guardians, and transact all business appertaining to the estates of minors, persons of unsound mind and habitual drunkards."

Appellants, in their brief, however, admit that there might be a case in which the district court might appoint a receiver, but assert that the case at bar is not such an one.

We cannot agree with appellants that Jerry Monroe's suit is essentially and primarily a suit to have his mother's estate administered in the district court.

As we view the case from a study of his petition, the primary purpose of his suit is to annul the marriage between W. A. Smith and his mother on the ground of her mental incapacity at the time the marriage ceremony was performed, and then he asks that a receiver be appointed to safeguard her property during the pendency of the suit and that W. A. Smith be enjoined from further interference with her estate.

[1] It cannot be contended that a district court is without jurisdiction to annul a marriage on the ground that the woman was mentally incapable of understanding the nature of her act at the time of the marriage. Marriage contracts, like contracts of any other kind, depend upon the consent of the parties, and if one of the parties is mentally incapacitated to such an extent as not to understand the nature of his or her act, then there can be no contract, and our courts will, upon a showing to that effect, annul or rescind upon application therefor.

[2] It is also well settled that such character of suit may be prosecuted by a next friend. Mills v. Cook (Tex. Civ. App.) 57 S. W. 81; Hughey v. Mosby, 31 Tex. Civ. App. 76, 71 S. W. 395 (error refused); Schneider v. Rabb (Tex. Civ. App.) 100 S. W. 163; Holland v. Riggs, 53 Tex. Civ. App. 367, 116 S. W. 167 (error refused); Skeen v. Skeen (Tex. Civ. App.) 190 S. W. 1118.

If we are correct in our conclusions that suits to annul marriages on the ground of incapacity of one of the parties are properly brought in the district court and that such suits can be brought by next friends, then the district court had jurisdiction as far as the annulment of the marriage was concerned.

[3] The next question which presents itself would be, Can the district court, having jurisdiction of an action to annul a marriage, appoint a receiver to take charge of the property to prevent its being dissipated and enjoin further interference with said estate by one who is alleged to have been dissipating it?

In 38 C. J. 1360, § 138, we find the following doctrine announced:

"Where a marriage is declared void, the wife may sue at law and recover her property. So, in passing sentence of annulment, the court has power inherently, and generally by express provision of statute, to make an order for the restitution to the wife of the property which the husband received from her or of which he acquired possession by virtue of the pretended marriage."

If this doctrine be correct, and in our opinion it is, then the court would have the power or to make all necessary orders to protect the property during the pendency of the suit, upon a showing that there was danger of its being dissipated.

In the case of Edwards v. Edwards, 14 Tex. Civ. App. 87, 36 S. W. 1080, where a daughter and others as next friends of the mother brought a suit against her son to set aside certain conveyances made by her to him, on the ground of fraud and undue influence on the part of the son in taking advantage of her feeble and helpless condition, mental and physical, proceedings had been theretofore instituted in the county court to have her adjudged insane and a guardian appointed, and a jury had found her sane, or at least had refused to find her insane. After the suit was filed to set aside the conveyances, a motion and plea was filed for the mother, denying her want of capacity or that she had been defrauded, and charged that her daughter and the others were her enemies and not her next friends, and prayed that the suit be dismissed. Upon a trial the jury found that she was mentally incapacitated to understand her acts, and thereupon the court, of his own motion, appointed a receiver to take charge of her property.

The Court of Civil Appeals of Texas in discussing the case on appeal had the following to say as to the jurisdiction of the district court and its authority to appoint a receiver:

"It is insisted that the district court had no jurisdiction in the premises, and that it erred in refusing to dismiss the suit upon the sworn plea and motion of Elizabeth Edwards. The question thus raised has been considered by the courts, and discussed by the text-writers; and it seems to be the general concensus of opinion that equity jurisdiction is maintainable in cases like this, where the person of weak mind has not been, or cannot be, adjudged a lunatic by the special tribunal provided by law for that purpose, and yet it is so far incapacitated by disease, decrepitude, or other infirmity, as to require the protection of a court of equity against the undue influence and fraud of others. The most satisfactory statement of this doctrine we have been able to find is made by Mr. Beach, in section 49 of his work on Modern Equity Practice, where the authorities are cited in the footnotes. Holzheiser v. Railway Co. [11 Tex. Civ. App. 677] 33 S. W. 887, decided by the Galveston Court of Civil Appeals, is an instance of its application. Howard v. Howard, 87 Ky. 616, 9 S. W. 411 [1 L. R. A. 610], is to some extent a precedent for the course pursued in this case, where the alleged incompetency was disputed by the person in

whose behalf the alleged next friends purported to sue.

"It is also insisted that the court had no power to appoint a receiver, or to make allowances, to be paid out of the estate, to the next friends or their attorneys, to cover reasonable attorney's fees, and other necessary expenses of the litigation. But this power would seem to be but an incident of, and included within, that just considered. The protection of the court, through a receiver, who is but an arm thereof, seems as requisite in the last instance as the original decree of cancellation and recovery was in the first. See Railway Co. v. Stuart, 1 Tex. Civ. App. 642, 20 S. W. 962."

An application was made for a writ of error and was refused by the Supreme Court in this case.

Appellants also contend that if Mrs. Smith was in fact non compos mentis the probate court offers a complete and adequate remedy for the protection of her estate.

It may be admitted that in the county court she might have been adjudged insane and a guardian appointed to look after her estate, but such judgment would be of no weight in deciding her mental condition at the time of the pretended marriage ten years previous.

Under the statutes relative to the appointment of guardians, W. A. Smith would have been entitled to the guardianship in preference to any other person, unless it could be shown that he was in some way disqualified. Rev. Stat. 1925, arts. 4121 and 4122.

[4] In a case where, as in the one at bar, the granting of an injunction is merely ancillary to the main action and is for the purpose of protecting property later to be disposed of by the court, a showing that the same relief might be obtained in some other forum will not, in our opinion, prevent the court from making such order.

[5] It must be borne in mind that no appeal was taken from the order appointing the receiver in this case, and unless the order appointing such receiver was absolutely void, then the action of the court in that respect must be sustained.

Appellants also insist that the order appointing the receiver here is wholly void because made prior to filing of the plea of intervention.

[6] We cannot agree with this contention for the reason that the supplemental transcript shows a reappointment of said receiver on November 28, 1927, some time after the first appointment, and further shows in a recital in said order by the trial judge that the orders appointing a receiver and granting the injunction were both made some days after the filing of the plea of intervention had been filed. Nor can we agree with appellants that the trial court abused his discretion in granting the injunction.

There being, in our opinion, no error in the trial court's action in granting the injunction, its judgment is affirmed.

Affirmed.