## COLQUITT et al. v. GULF PRODUCTION CO. et al.

No. 1241—5744.

Commission of Appeals of Texas, Section B.
July 19, 1932.

Belcher & Montague, of Del Rio, John F. Sutton, James Cornell, and R. G. Hughes, all of San Angelo, L. W. Elliott, of Sonora, Dayton Moses, of Fort Worth, Howell Johnson, of Ft. Stockton, and W. A. Keeling, of Austin, for plaintiffs in error.

Smith & Neill and Wright & Gibbs, all of San Angelo, David Proctor, of Houston, H. L. Stone, of Pittsburgh, Pa., and John E. Green, Jr., of Houston, for defendants in error.

SHORT, P. J.

This case originated in the district court of Pecos county, where there was a trial to a jury answering special issues, upon which a judgment was rendered in accordance therewith, in favor of the original plaintiffs, who are the plaintiffs in error here. Upon appeal to the Court of Civil Appeals at El Paso, the judgment of the district court was reversed, and in part rendered and in part remanded, for a new trial. 25 S.W.(2d) 989. The application for the writ of error to the Supreme Court having been granted, the case was referred to this Section of the Commission. The record is a voluminous one, and, while there are many questions of law presented in the application, there are two major and controlling ones. We do not think we can improve upon the statement of the case and of the questions discussed by the Court of Civil Appeals, which has been made by the plaintiff in error in their application for writ of error. This statement is as follows:

"This suit was instituted by W. H. Colquitt as receiver of the estate of Mrs. M. A. Smith, the validity of whose appointment as receiver was upheld by the Court of Civil Appeals in Smith v. Monroe, 1 S.W.(2d) 358, and by W. H. Colquitt also as next friend of Mrs. M. A. Smith, basing his right to sue as next friend upon the fact alleged that Mrs. Smith was 'by reason of bodily infirmity, mental infirmity, and both bodily and mental infirmity incapable of caring for her rights in the litigation.'

"The cancellation of two certain so-called oil and gas leases was sought. The first of said leases is described as follows:

" 'Date December 20, 1924, and claimed to have been executed by Mrs. M. A. Smith, joined by W. A. Smith, her husband; Mrs. M. A. Smith as Guardian of the Estate of Lennie Lorena Mathews et al., minors; Mrs. Ida May Ramsey and husband, G. W. Ramsey; Mrs. Viola Seeley and husband, Oliver Seeley, all acting individually and as agents of the State of Texas, to E. C. Marrs, covering Sections 28, 22 and the West 116½ acres of Section 20.'

"The second of said leases is described as follows:

" 'Date December 2, 1924, claimed to have been executed by Mrs. M. A. Smith and husband, W. A. Smith, to E. C. Marrs, covering the East 523½ acres of Survey No. 20.'

"Sections 22 and 28 belonged to the public free school lands and were sold by the State of Texas September 21, 1915, to Mrs. M. A. Monroe, who later married W. A. Smith. The land was sold under a mineral and dry

grazing classification. Section 20 belonged to the public free school land and was purchased from the State on October 6, 1905, by John Monroe, the former husband of Mrs. Smith, under a dry grazing classification.

"The right to have these instruments cancelled was based upon the allegation that Mrs. M. A. Smith, the sole owner as between her and her husband, W. A. Smith, was 'by reason of bodily infirmity and by reason of mental infirmity, and by reason of both bodily and mental infirmity incapable of understanding the nature, character and effect of such instruments, and each of them, and lacking in legal capacity.' A trial was had to a jury and special issues submitted, three of which called for an answer as to the ability of Mrs. M. A. Smith to care for her interests in the litigation:

"'(a) At the time of the filing of the original petition.

"'(b) At the time of the filing of the first amended original petition on which the cause of action proceeded to trial.

"'(c) At the time of the charge being delivered.'

"Two other special issues were submitted, one requiring the jury to answer as to the competency of Mrs. Smith at the time of the purported execution of one of the oil and gas leases; the other requiring an answer as to her mental condition at the time of the making of the other of the purported oil and gas leases.

"All issues were answered by the jury in the affirmative; no misconduct of the jury was charged. Upon the authority consisting of such answers to such issues, the court rendered judgment for appellee as receiver and as next friend, cancelling the instruments sought to be cancelled and rendering a money judgment for plaintiffs in error for W. H. Colquitt as Receiver and next friend against the Gulf Production Company for $61,160.92 and in favor of E. C. Marrs against W. H. Colquitt as Receiver and next friend for the sum of $12,000.00.

"The Gulf Production Company appealed from this judgment and the Court of Civil Appeals of the Eighth Supreme Judicial District of Texas, on the 20th day of February, 1930, reversed and rendered said judgment in part and reversed and remanded it in part. Plaintiffs in error thereafter, to-wit: on the 6th day of March, 1930, filed in the Court of Civil Appeals for the Eighth Supreme Judicial District a motion for a rehearing of said cause, which was by said court denied and overruled on the 13th day of March, 1930.

"The Court of Civil Appeals for the Eighth Supreme Judicial District of Texas, upon a final hearing of this cause, reversed the judgment of the District Court of Pecos County, Texas, and rendered judgment in favor of defendants in error in part and reversing and remanding said cause in part, the court thereby expressly holding:

"'(a) That as to Sections 22 and 28, being public free school lands sold by the state to Mrs. M. A. Monroe and classified as mineral and dry grazing lands, and upon which lands an oil and gas lease had been executed by various owners of said lands individually and as agents for the State of Texas, the petition filed in the trial court by the plaintiffs in error stated no cause of action; that as to such sections Mrs. Smith had no title which would enable plaintiffs in error to maintain and support this action for the cancellation of said leases.

"'(b) That as to the lease first hereinabove described, the State of Texas was an indispensable party to an action brought to annul and cancel said lease;

"'(c) That as to the least first hereinabove described, all parties to such instrument, to-wit: the Ramseys and Seeleys, who were non-residents of the State of Texas, and Mathews minors, whose estate was being administered in the County (Probate) Court of Tom Green County, Texas, were necessary and indispensable parties to this suit, a suit brought to cancel such lease;

"'(d) That purchasers of royalty interests from Mrs. Smith and Mrs. Ramsey on the lands covered by the two leases above described, were necessary and indispensable parties to this suit.

"'(e) That as to Section 20, classified as dry grazing land, those parties to whom Mrs. Smith had made royalty conveyances were necessary and indispensable parties to this suit;

"'(f) That as to that portion of said Section 20 embraced in the lease first above described, the State of Texas was an indispensable and necessary party to this suit;

"'(g) That as to Sections 22 and 28, being a mineral classification, the cause should be reversed and rendered;

"'(h) That the trial court erred in excluding certified copies of Guardianship proceedings had in Cause No. 135 in the County Court of Pecos County, Texas, and in Habeas Corpus proceedings, No. 3025, in the District Court of Tom Green County, Texas, and in suit No. 1323 in the District Court of Pecos County, Texas.

"'(i) That the trial court erred in excluding certified copies of proceedings in Causes Nos. 135 and 1423, referred to in (h) supra, on the ground that such proceedings tended to explain the hostility of Mrs. Smith towards her children and accounted for the mental attitude which caused the derogatory statements made by Mrs. Smith about her children.'

"That all of said questions and rulings are and were erroneously decided.

"Jurisdiction of the Supreme Court in this cause is founded upon the importance of the questions involved. The Court of Civil Appeals in its opinion herein has committed errors of substantive law and such errors have injuriously affected plaintiffs in error's right to recovery herein, and said Court of Civil Appeals has committed errors of law which are of such importance to the jurisprudence of this State that they require review and correction.

"Plaintiffs in error respectfully submit that such questions, erroneously decided by the Court of Civil Appeals herein, are as follows:

" '1. Where lands have been purchased from the State as mineral reserved lands and an oil and gas lease is thereafter made by said purchaser individually and as agent for the State, who at the time of the execution of such lease is insane and mentally incompetent to execute the same, no one on behalf of said owner, except the State, can institute a suit to cancel said lease.

" '2. That as to lands purchased from the State under a mineral classification, and upon which an oil and gas lease has been made by one mentally incompetent at the time of such execution, that a suit cannot be maintained by a next friend of such person, nor a receiver of such person and his estate, to cancel and set aside such lease without the State of Texas being a party to such suit.

" '3. Where an oil and gas lease is made by one mentally incompetent at the time of the execution thereof, and who thereafter executes mineral and royalty deeds conveying an interest in the lands covered by the lease, and a suit is brought on behalf of such incompetent to cancel such lease, that all of the grantees in such royalty and mineral conveyances are necessary and indispensable parties to such suit.

" '4. Where an oil and gas lease is executed by one who is mentally incompetent, who is joined by a non-resident of the State of Texas, and by the Guardian of the persons and estates of minors, as co-grantors, whose estate is being administered in the County (Probate) Court of Tom Green County, a suit to cancel such lease upon the grounds of mental incapacity cannot be brought or maintained in Pecos county by or on behalf of such incompetent to cancel such lease without the joinder, as either plaintiffs or defendants, of (a) the non-residents; (b) the minors.'

"The jurisdiction of the Supreme Court is invoked also upon the ground that the decision in this case involves a construction of a statute, i. e., article 5367 to 5382 inclusive, R. S. 1925, known as the Relinquishment Act." '

We have reached the conclusion that as to sections 22 and 28 the opinion of the Court of Civil Appeals had declared the law of the case correctly under the facts found by that court. Harper v. Terrell, 96 Tex. 479, 73 S. W. 949; Island City Savings Bank v. Dowlearn, 94 Tex. 383, 60 S. W. 754; Logan v. Curry, 95 Tex. 664, 69 S. W. 129; Mitchell v. Robison, 103 Tex. 641, 132 S. W. 465; United States v. Stone, 2 Wall. 525, 17 L. Ed. 765; Moore v. Robbins, 96 U. S. 530, 24 L. Ed. 848; Noble v. Union River Logging R. R. Co., 147 U. S. 165, 13 S. Ct. 271, 37 L. Ed. 123; United States ex rel. McBride v. Schurz, 102 U. S. 378, 26 L. Ed. 167; Laidlaw Brothers v. Marrs, Supt., 114 Tex. 561, 273 S. W. 789; Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S. W. 722.

The authorities which we have cited, as well as those cited in the opinion of the Court of Civil Appeals, sustain the following propositions:

"1. In selling the land with the reservation of the mineral, the state divided it into two estates: (1) That acquired by the purchaser in the soil or surface; and (2) that retained by the state in the minerals constituting part of the land. An incident of the latter estate was the right of entering on the land for the purpose of prospecting and mining and doing everything essential to the finding and taking out of the minerals.

"2. Neither by the original sale nor by the relinquishment act and action taken in accordance with it, did the owner of the soil or surface acquire any right, title or interest to or in this mineral estate, or in the easement attending it, or in the proceeds or price thereof when sold or leased.

"3. The Relinquishment Act made the surface owner the agent of the State to sell or lease 'the oil and gas on or in the land' and the easement going with it; and did not require nor authorize such owner to sell, or lease, anything else; but in order only to compensate such owner for damage to be done to his surface estate by mining for the oil and gas, the act gave consent for him to exact from the purchaser or lessee the things mentioned in the statute, not for any interest in the minerals or their proceeds, but simply as such compensation.

"4. The lease in question is of the land 'for the sole and only purpose of mining and operating for oil and gas' and doing the incidental things essential to such mining operations; and according to the decisions of this court, vested in the lessee only the mineral estate in the oil and gas with the right to use the land for the purposes specified and for no other purpose. This estate and right of use was exactly what the State alone owned and this lease therefore passed to the lessee and nothing else.

"5. These propositions lead inevitably to the conclusions:

"(a) That the State is the lessor through the authorized action of its agent, since it

passes to the lessee nothing but the property of the State;

"(b) That the lease belongs to the State alone and that no one but the State can maintain an action to avoid it.

"6. The payments stipulated to be made by the lessee to Mrs. Smith and her co-tenants of the surface are not for any interest in the mineral estate and easement or the proceeds thereof belonging to the State. The surface owners are allowed by the statute to exact such payments from the lessee merely as compensation to be obtained only by a sale or lease as the State's agents. This compensation can be gotten only under the lease and the right to it can not be used as a basis for destroying the lease."

█ We have therefore reached the conclusion that under the undisputed evidence, no right exists to a cancellation of the lease of sections 22 and 28 in behalf of Mrs. Smith, because she had no interest in the subject-matter thereof, and also because the lease is of such a character, and was executed under such circumstances, as to make it valid, even if she were insane when it was executed. The action of the Court of Civil Appeals in reversing the judgment and rendering final judgment against the defendants in error as to sections 22 and 28 is correct, because under the Relinquishment Act (Rev. St. 1925, arts. 5367–5382) which must control, Mrs. Smith never had any estate or interest in the minerals in those sections, the subject of the lease, nor any right respecting them, which would support an action by her, or in her behalf, to cancel the lease as to them. Such rights or privileges as Mrs. Smith had with respect to the mineral estate in these two sections arose out of, and are wholly dependent upon the relinquishment statute, and her action thereunder. That she did not acquire title to that estate, or any part of it, or interest in the proceeds of a sale of it, either by that statute, or by anything she did or could do under it, is now fully established according to the declaration of the law in Greene v. Robison, 117 Tex. 516, 8 S.W.(2d) 655. It necessarily follows, from the decision in Greene v. Robison, that the lease was from the state, and that it established the relation of lessor and lessee between the state, as lessor, and Marrs, and afterwards, by assignment, the Gulf Production Company, as lessee. Being, in law, the only lessor of the mineral estate and all its incidents, the state is the only one who could maintain an action to avoid the transaction, even if good cause existed therefor.

█ We also agree with the opinion of the Court of Civil Appeals that the rights of the Gulf Production Company, as assignee, could not be injuriously affected in any suit to which the state is not a party, and that the state only has the right to question the validity of the lease contract made through its agent, whereby the Gulf Production Company acquired, as assignee, the rights which it claims. So long as the contract is not canceled at the suit of the state, it is apparently a valid one, and all the parties thereto having an interest in the subject-matter are bound thereby. We have thought it necessary to say this much in approving the opinion of the Court of Civil Appeals in so far as that opinion relates to sections 22 and 28.

We have also concluded that the opinion of the Court of Civil Appeals, with reference to the admission and rejection of the testimony, as indicated in that opinion, is correct, and that it is not necessary to mention the assignments relating to those matters further than to say that they are overruled.

█ The Court of Civil Appeals erred in its opinion in holding that it was necessary to join the state in the suit to the extent that the same concerns the west 116½ acres of section 20, and the assignments of error relating to that subject are sustained. The state has no interest in section 20, and has not had any since its sale of that section, which included both the surface and mineral rights. The mere fact that Mrs. Smith and her children erroneously assumed to act as agents for the state in attempting to transfer the minerals to the west 116½ acres of section 20 did not have the legal effect to give the state any interest in the minerals sought to be conveyed, or to give the state any right to demand any royalty contingent upon the production of oil and gas in the west 116½ acres of section 20. To that extent only we disapprove the holdings of the Court of Civil Appeals in its opinion, and we sustain the assignments of error relating to this subject, holding that the state is not an indispensable party to this suit in so far as relates to section 20.

█ However, we think the opinion of the Court of Civil Appeals is correct in holding that all parties are necessary parties who are shown to have an interest in section 20, including, of course, Mrs. Ramsey and Mrs. Seeley and the Mathews minors, as well as the assignees of Mrs. Smith and her husband.

We therefore recommend that the judgment of the Court of Civil Appeals be modified to the extent above indicated, and that, as modified, the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is reformed, and, as reformed, is affirmed, as recommended by the Commission of Appeals.